IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NEHEMIAH L. HICKS                                                                              PLAINTIFF

v.                                 Civil No. 14-5372

NURSE RHONDA BRADLEY;
OFFICER MACKEY; DR. ROBERTO
SAEZ; SOUTHERN HEALTH PARTNERS,
INC.; and JAILER C. SMITH (#563)                                                      DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Ouachita River Unit of the Arkansas Department of Correction. The events at issue in this case occurred while Plaintiff was incarcerated in the Washington County Detention Center (WCDC). Plaintiff maintains Defendants violated his constitutional rights by failing to provide him with adequate medical treatment.

Nurse Rhonda Bradley, Dr. Roberto Saez, and Southern Health Partners (SHP), Inc., the "Medical Defendants" have filed a Motion to Dismiss (Doc. 7). Plaintiff has responded (Doc. 12) to the Motion. The Motion is before me for issuance of this report and recommendation.

### I. BACKGROUND

On November 3, 2014, Plaintiff alleges he was arrested by Officer Mackey and detained for eight and one-half hours before he was transported to the WCDC. Plaintiff states he informed the officers that he had bi-polar disorder, intermittent explosive disorder, clinical depression, and anti-social disorder. Plaintiff alleges that he had five prescription medications on his person at the time of his arrest. Plaintiff alleges he asked to be given his prescription medication.

When he was booked into the WCDC, Plaintiff alleges that the prescription medications he brought with him included Oxycodone, Xanax, and Flexeril. The number of pills in each bottle was counted and Plaintiff initialed the count. The medication was then taken away and he did not receive any medication for four-and-one-half days. Plaintiff further alleges that he was only provided with partial dosages of his medication over the next two weeks. After two weeks, Plaintiff alleges he began to receive an anti-depressant and mood stabilizer. He asserts he did not receive three of his prescription medications at all.

With respect to Nurse Bradley, Plaintiff alleges she delayed the provision of prescription medication and failed to provide proper medical treatment. He asserts that she failed to follow the Hippocratic Oath and did not ensure that he received proper dosages of his medication. Plaintiff further maintains that she provided medical treatment at her discretion without regard to medical need.

With respect to Dr. Saez, Plaintiff alleges he did not perform a physical examination of the Plaintiff, was there for only about five minutes, and brushed Plaintiff aside. Plaintiff indicates Dr. Saez increased Plaintiff's anti-depressant dosage because of the Plaintiff's complaints. Dr. Saez denied Plaintiff his pain medication, his anxiety medication, and his muscle relaxer telling him to buy Tylenol from the commissary. Plaintiff alleges that Dr. Saez showed no kindness, caring, or compassion. Plaintiff alleges Dr. Saez failed to follow the Hippocratic Oath.

At the time of his arrest, Plaintiff alleges he told Officer Mackey that it was time for him to take several medications. Officer Mackey removed the medication from the Plaintiff's car and placed it in the dispatch area of the jail. Despite the fact that Officer Mackey was aware of Plaintiff's need for his prescription medication, Plaintiff alleges Officer Mackey did nothing to

assist Plaintiff in getting his medication the day of his arrest or for the first two weeks he was incarcerated at the WCDC.

With respect to SHP, Plaintiff alleges it failed to follow the Hippocratic Oath and provided medical services at its discretion and not based on medical need. Plaintiff alleges it denied him access to medication and to proper medical treatment. Further, Plaintiff alleges SHP failed to comply with its own policy of allowing inmates to see their own physicians at their request and at their own expense. Plaintiff indicated that he requested to be taken to see his counselor and psychiatrist and had an appointment pending at the time of his incarceration. Plaintiff alleges he was not taken to his appointment but was seen by a psychiatric nurse in a move Plaintiff believes was designed by SHP to shield itself from liability.

With respect to Officer Smith, Plaintiff alleges he denied Plaintiff's request for medical treatment and filed false disciplinary charges against him. According to Plaintiff, on November 7, 2014, he was in the shower getting ready for court when medication was being dispensed. Plaintiff draped a towel over himself and went to get his medication. Plaintiff states Officer Smith became angry with him and said he should have put on his jail uniform. Plaintiff was charged with a major disciplinary violation.

## II. APPLICABLE STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" Braden, 588 F.3d at 594 (quoting Iqbal, 556 U.S. at 678). The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation," or reasonable inference, that the "defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)(while pro se complaints are liberally construed, they must allege sufficient facts to support the claims).

### III.  DISCUSSION

The Medical Defendants have now moved for dismissal of all official capacity claims. They maintain the Plaintiff has failed to allege any facts to show that an official institutional policy or custom of SHP was unconstitutional or that it was a moving force behind any alleged harm that he suffered.

A Plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997). Here, SHP by contract assumed Washington County's constitutional duty to provide adequate medical care. "When a private entity like [SHP] contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the states. In so doing, it becomes the functional equivalent of the municipality" and an essential element of its liability is the existence of a custom or policy. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997); see also Burke v. N.D. Dep't of Corr. & Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002)(When a corporation acts under color of state law, the proper test for determining official capacity liability is whether a policy, custom,

or action by those whose actions may be said to represent official policy inflicted the constitutional injury).

"There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." Moyle v. Anderson, 571 F.3d 814, 817-18 (8th Cir. 2009)(citation omitted). Plaintiff has not alleged a plausible "policy" claim. In short, he has not pointed to "any officially accepted guiding principle or procedure that was constitutionally inadequate." Jenkins v. County of Hennepin, 557 F.3d 628, 633 (8th Cir. 2009). Merely alleging that procedures were not followed is insufficient. Id. Plaintiff has not pointed to a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority in such matters." Id.

"[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." Id. at 634 (internal quotation marks and citation omitted). Plaintiff has not asserted facts sufficient to state a plausible claim that there was any widespread, persistent pattern of unconstitutional conduct. The Medical Defendants' Motion to Dismiss (Doc. 7) should be granted.

### IV.  CONCLUSION

For the reasons stated, I recommend that the Motion to Dismiss (Doc. 7) filed by Separate Defendants Nurse Rhonda Bradley, Dr. Saez, and Southern Health Partners, Inc. be **GRANTED**. This would dismiss all claims against Southern Health Partners, Inc., and the official capacity

AO72A
(Rev. 8/82)

claims against Nurse Rhonda Bradley and Dr. Saez. The individual capacity claims against Nurse Rhonda Bradley and Dr. Saez will remain in the case.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of July, 2015.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)