IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NEHEMIAH L. HICKS                                                        PLAINTIFF

           v.                        Civil No. 5:14-cv-05372

NURSE RHONDA BRADLEY;
OFFICER MACKEY; DR. ROBERTO
SAEZ; and JAILER C. SMITH (#563)                                        DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

        This is a civil action filed by the Plaintiff, Nehemiah L. Hicks, on December 14, 2014,

pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis.*

        The events at issue in this case occurred while Plaintiff was incarcerated in the

Washington County Detention Center (WCDC).  Plaintiff maintains Defendants violated his

constitutional rights by failing to provide him with adequate medical treatment and by filing

retaliatory disciplinary charges against him.  He was transferred to the Arkansas Department of

Correction (ADC) from the WCDC.  Plaintiff has since been released from incarceration.

        The case is before the Court on three Motions for Summary Judgment: (1) filed by Jailer

C. Smith (ECF Nos. 51-53); (2) filed by the Medical Defendants, Nurse Rhonda Bradley and Dr.

Roberto Saez (ECF Nos. 55-57); and, (3) filed by Officer Mackey (ECF Nos. 58-60).  Plaintiff

filed a written response (ECF No. 63).[1]  A hearing was held on the Motions on February 2, 2016,

to allow the Plaintiff to respond by testifying.  The Medical Defendants filed three supplemental

---

[1] Plaintiff refers to this document as a Motion for Summary Judgment.  However, he does not contend he is
entitled to judgment in his favor.  Rather, he contends there are genuine issues of material fact that preclude judgment
in favor of the Defendants.  Plaintiff has attached to this document a number of exhibits.  Some of the exhibits deal with
time frames after the filing of this complaint and/or a subsequent incarceration at another facility.  These exhibits will
not be addressed.  *For example, Plaintiff's Exs. P & Q.*

-1-

pleadings to their Motion (ECF Nos. 62, 66 & 69), and Plaintiff filed three additional documents

in opposition of the Defendants' Motions.  (ECF Nos. 65, 67, & 70).  The Motions are now ready

for decision.

## I.  BACKGROUND

On November 3, 2014, at approximately 4:07 p.m., Plaintiff  was arrested by Officer

Mackey of the Springdale Police Department.  *Smith Exhibit* A-1 at 33.[2]  Plaintiff informed the

officers that he suffered from bi-polar disorder, depression, and arthritis.  *Id.* at 38.  Plaintiff had

five prescription medications on his person at the time of his arrest.  *Id.* at 32, 36, 38.  When

Plaintiff asked for his medication, Officer Mackey replied that he would be given it when he got

to the jail.  Plaintiff testified he was at the Springdale Police Department for approximately eight

and a half hours.  Although he alleged Officer Mackey denied him medical care, at the hearing,

Plaintiff testified that the delay was only a matter of hours and he could not establish that Officer

Mackey was deliberately indifferent to his serious medical needs.

Plaintiff was transported to the WCDC at 11:39 p.m. on November 4, 2014.  *Smith Ex.*
*A-1* at 32.  He was booked in on November 5, 2014.  *Id.*  He remained incarcerated there until

he was transferred to the ADC on March 26, 2015.

When he was booked into the WCDC, Plaintiff had with him Bupropion[3] (55 tablets),

---

[2]Page references for this exhibit are to the "Hicks Jail File" page number located in the center at the bottom of
the page.

[3]Generic form of Wellbutrin.  Used to treat depression.
https://www.nlm.nih.gov/medlineplus/druginfo/meds/a695033.html (accessed June 30, 2016).

AO72A
(Rev. 8/82)

Oxycodone[4] (10 tablets), Cyclobenzaprine[5] (21 tablets), Xanax[6] (15 tablets), and Topamax[7] (9 ½ tablets).  *Smith Ex.* A-1 at 55.  Prior to his incarceration, Plaintiff testified he took Oxycodone four times a day, Xanax, Wellbutrin and Topamax twice a day, and Flexeril four times a day. *Smith Ex.* B at 30-31.  He testified he also had a prescription for Abilify to help him sleep, but he did not have that medication with him when he was arrested.  *Id.* at 32.

On November 1, 2014, Southern Health Partners (SHP) began providing all medical care in the WCDC pursuant to a contract with Washington County.  *Smith Ex.* A at ¶ 8.  Nurse Bradley and Dr. Saez were employed by SHP.  *Med. Defts' Exs.* 1 at ¶ 2 & 2 at ¶ 2.  Plaintiff maintains that SHP policy requires the continuation of medication brought into the facility by an inmate.  ECF No. 63 at pgs. 4-5; *Plff's Ex.* J (ECF No. 63-16) at 2.  He maintains the Medical Defendants violated SHP policy.[8]  *Id.*

On November 5, 2014, Plaintiff submitted a grievance stating that he had not taken his medication since 9 a.m. on November 4.  *Smith Ex.* A-1 at 194.  He submitted two other grievances that day indicating he still had not received his medication.  *Id.*  He also notified medical staff of upcoming appointments with his counselor, group therapist, and psychiatrist. *Id.* at 194.  Plaintiff testified that he did not believe it was appropriate to stop his medication "cold turkey" because of the possibility of adverse reactions.  *Smith Ex.* B (ECF No. 63-2) at 59

---

[4]Used to relieve moderate to severe pain.
https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682132.html (accessed June 30, 2016).

[5]A muscle relaxant. Brand name Flexeril.
https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682514.html (accessed June 30, 2016).

[6]A brand name for alprazolam.  Used to treat anxiety disorders and panic disorder.
https://www.nlm.nih.gov/medlineplus/druginfo/meds/a684001.html (accessed June 30, 2016).

[7]A brand name for topiramate.  Used to treat seizures.
https://www.nlm.nih.gov/medlineplus/druginfo/meds/a697012.html (accessed June 30, 2016).

[8]The official capacity claims against the Medical Defendants were dismissed on August 6, 2015 (ECF No. 46).

& 65.   He did not, however, immediately have any adverse reaction because of the discontinuation of his medication. *Id.* at 63. Plaintiff testified he did develop intrusive thoughts because his medication got "messed up" and was not working as well as the medications he was on before his incarceration. *Id.* at 65-68.

On November 5, 2014, Dr. Saez verbally ordered that Plaintiff be continued on topiramate (Topamax) 100 mg 1 ½ tabs twice a day; buproprion (Wellbutrin) 75 mg. daily until November 15, 2014, then twice a day. *Smith Ex.* A-1 at 116; *Med. Defts' Exs.* 1 at ¶ 8 & 1-c. On November 6, 2014, Plaintiff submitted a grievance saying he still had not received his medication. *Smith Ex.* A-1 at 195. Plaintiff was screened by medical staff that day. *Id.* at 44. The screening makes no mention of Plaintiff having arthritis. *Id.* On November 7, 2014, Teresa Lee responded that his medications were on the cart but he had to come out to get them. *Id.* at 196.  She advised the Plaintiff that if he did not come out to receive the medication, they would not come and find him. *Id.*

With respect to Jailer Smith, Plaintiff maintains that he denied him medical treatment and placed disciplinary charges against him in retaliation for complaining about his medication and being uncooperative.   Plaintiff testified he had repeatedly asked Jailer Smith about his medication, and that Jailer Smith had spoken with the Plaintiff's girlfriend about the fact that Plaintiff was not receiving his medication.

Plaintiff testified that November 7, 2014, he was in the shower getting ready for court when medication was being dispensed by the nurse. Jailer Smith directed the Plaintiff to put his clothes on to go to the medical cart.   Plaintiff testified he asked Jailer Smith to bring the medication to him.  Jailer Smith refused saying Plaintiff had to go to the door.  Plaintiff draped a towel over himself and went to get his medication.  Jailer Smith again told Plaintiff to get

-4-

dressed. Instead, Plaintiff returned to the shower. Plaintiff did not receive his medication at that time, but testified he received it that evening.

Plaintiff states Jailer Smith became angry with him and said he should have put on his jail uniform. Plaintiff was charged with major disciplinary violations for failure to obey an order of staff, not wearing his clothing according to facility policy, behavior which was aggressive or disruptive and using abusive or obscene language. *Smith Ex.* A-1 at 49. Plaintiff complained that he felt the charges were unjustified. *Id.* at 196. He testified that the charges were vindictive and in retribution for his having complained about his medication.

Plaintiff had not seen any other inmate receive medication when they were in a towel. *Smith Ex.* B (ECF No. 63-2) at 71-72. However, he had seen, more than once, officers bring inmates who were in the shower their medication. *Id.* at 72. Plaintiff believes Jailer Smith should have simply left the door and brought Plaintiff the medication. *Id.* at 73. Instead, Jailer Smith "wanted to be in control of that whole situation" and "wanted me to do things his way." *Id.*

Deputy Bonilla witnessed the exchange between Plaintiff and Jailer Smith and submitted an incident report. *Smith Ex.* A-1 at 47. Jailer Smith also submitted an incident report. *Id.* at 48.

On November 10, 2014, Plaintiff was given a copy of the disciplinary notice and notice of hearing advising him the hearing would be on November 14, 2014, asking how he wished to plead, and asking if he wanted an assistant appointed to help him. *Smith Ex.* A-1 at 49, 51, 58. He signed the forms indicating he would plead not guilty and stating he did not wish an assistant appointed. *Id.* Plaintiff's requests for witnesses were approved. *Id.* at 59-60. Plaintiff requested witness statements from several officers, but they were unaware of the incident. *Id.* at 52, 61,

63, 64, 67, 68.  Plaintiff submitted a written statement.  *Id.* at 51.[9]  He submitted a second statement at the request of the disciplinary committee.  *Id.* at 65.  The disciplinary hearing was delayed until November 20, 2014, because the case required more investigation and they were waiting on witness statements.  *Id.* at 66.  On November 14, 2014, Sergeant Morse submitted a statement based on his review of the video.  *Id.* at 65.

On November 20, 2014, Corporal Alderson held a disciplinary hearing.  *Id.* at 69-71.  The video was reviewed and found to be consistent with both Jailer Smith's report and Plaintiff's statement.  *Id.* at 70.  The infractions were reduced to minor infractions and no sanctions were imposed.  *Id.*  at 70 & 73.  Plaintiff did not appeal.  *Id.* at 73.

Plaintiff's remaining claim against Jailer Smith is based on his conduct on November 20, 2014.  *Smith Ex.* B at 57.  Plaintiff testified that on that day Jailer Smith was present when Nurse Bradley told the Plaintiff that he could either continue to file grievances or he could see the doctor.  Plaintiff felt that Jailer Smith should have taken some action to stop Nurse Bradley's conduct.  Plaintiff testified that had Jailer Smith advised the administration how Plaintiff was being treated it was his belief that they would have stepped in and gotten him the medicine he needed.  *Smith Ex.* B at 80-81.

On November 9, 2014, Plaintiff submitted a grievance complaining that he had not received his medication for four days and then when he began receiving some medication it was not what he should have been given.  *Smith Ex.* A-1 at 50, 107, 198.  Plaintiff indicated he received partial doses of medication from November 8 to November 10, and only a single medication on November 11 and November 12, 2014.  *Id.* at 107.  On November 10, Plaintiff

---

[9]Plaintiff's written statement follows page 51 of the jail file but does not itself contain a jail file page number. What appears to be another, less legible, copy of this statement is found on page 52.

signed an authorization for the release of medical information for the jail to receive copies of his medication list and medical records. *Id.* at 55. Plaintiff testified he never received the proper dosages, in his view, the dosages he was on prior to his incarceration, during his incarceration at the WCDC.          Plaintiff testified he was constantly in pain from his rheumatoid arthritis and he was not allowed to have his narcotic pain medication. He was told his pain would have to be addressed with over-the-counter medication such as Tylenol as it was a controlled substance free facility. *Smith Ex.* B at 59.

Plaintiff was seen by a nurse on November 11, 2014. *Smith Ex.* A-1 at 111. There is no record evidence suggesting changes were made to his medication on this day.

On November 16, 2014, Plaintiff submitted another request complaining he had asked to see the doctor because he was not being given the medications he came into the jail with. *Smith Ex.* A-1 at 107, 200. Plaintiff was seen by Nurse Bradley on November 18, 2014. *Id.* A-1 at 112. He was complaining of pain and requested Flexeril and Oxycodone. *Id.* According to her notes, she advised him to obtain over-the-counter medication from the commissary. *Id.* Plaintiff requested a psychiatric consult and was put on the psychiatric nurse's list. *Id.*

On November 19, 2014, Plaintiff submitted another grievance. *Smith Ex.* A-1 at 202. He complained he felt his grievances were not being properly addressed, and he complained his medications had not been "fixed." *Id.* He felt they were ignoring the importance of the medications, the possibility that the lack of medication would trigger episodes, and his need for continuity of care. *Id.* He asked to be taken to his own treating physicians. *Id.*

On November 19, 2014, he was seen by the psychiatric nurse. *Smith Ex.* A-1 at 113. Plaintiff complained he was not receiving his medication in the correct dosages and sometimes not at all. *Id.* The nurse indicated she would follow-up with Perspectives Behavioral Health

-7-

Management where Plaintiff had been treated.  *Id.*  Later that day, the nurse noted that the medication was being given in the correct dosage and frequency and was in the correct location. *Id.*

Plaintiff was seen by the doctor on November 21, 2014, and the dosage of Wellbutrin was increased to 150 mg. twice a day.  *Smith Ex.* A-1 at 114.  Plaintiff was seen by the psychiatric nurse again on December 2.  *Id.* at 113.  He requested Xanax and the nurse suggested they try another medication Zyprexa, 5 mg. daily.  *Id.*  Plaintiff complained of agitation, and the dosage of Wellbutrin was decreased to 150 mg. once a day.  *Id.* at 115-116.  The psychiatric nurse saw him again on December 8, and he reported being sleepy from the Zyprexa but having no other side effects.  *Id.* at 115.  No change was made to the Zyprexa prescription.  *Id.*  Plaintiff was seen by the psychiatric nurse again on December 16, 2014, and he complained of severe sleepiness and requested that the Zyprexa be given at night.  *Id.* at 115 & 118.  The change was made.  *Id.* at 117.

With respect to Nurse Bradley, Plaintiff testified he felt she delayed the provision of his prescription medication.  On at least one occasion, he testified she dropped his medication on the floor and made him take it anyway.  Plaintiff also indicated that she told him he could continue to file grievances or he could see the doctor.  At the time, he testified she had his grievances in her hand.  Plaintiff further maintains that she provided medical treatment at her discretion without regard to medical need.  Nurse Bradley denies that she told him he could either file grievances or see the doctor.  *Med. Defts' Ex.* 1 at ¶ 21.

Plaintiff testified he saw Dr. Saez on November 21, 2014.  *See also Med. Deft. Ex.* 2 at ¶ 6.  Dr. Saez increased Plaintiff's Wellbutrin dosage from 75 mg. twice a day to 150 mg. twice a day to help control Plaintiff's anxiety.  *Id.*  According to Dr. Saez, Plaintiff did not mention

AO72A
(Rev. 8/82)

arthritis or request any medication for pain relief. *Id.*

Plaintiff indicates Dr. Saez did not perform a physical examination of the Plaintiff other than taking his blood pressure and listening to his chest. *Smith Ex.* B at 62. Plaintiff testified he only saw the doctor for three to five minutes. *Id.* at 62. Plaintiff indicates Dr. Saez did nothing about his pain medication. *Id.* With respect to arthritis, Plaintiff argues that he mentioned arthritis and his need for pain medication during intake and screening as well in multiple requests prior to his being seen by Dr. Saez. *See* ECF No. 63 at pgs. 2-4; *Plff's Ex.* A (ECF No. 63-1).

On November 21, 2014, Plaintiff's records from Perspectives Behavioral Health were received. *Med. Defts' Ex.* 1 at ¶ 20. They show that as of October 14, 2014, Plaintiff was only receiving Wellbutrin, Topamax, and Ambien. *Id. &* 1-i Although the records indicate Plaintiff reported having arthritis, he was on no medication for that condition. *Id.* at ¶ 19 & 1-h, 1-i. Plaintiff argues that the Medical Defendants did not obtain his medical records from his primary care physician or his pain management physician. ECF No. 63 at p. 6. Defendants did request the records from these physicians. *Plff's Ex.* E-1 (ECF No. 63-7). It does not appear, however, that the records were ever received.

Further, Plaintiff points out that the Perspectives' records do indicate he had degenerative arthritis. *Plff's Ex.* B (ECF No. 63-2) at 3. The records also note, however, that Plaintiff was not currently taking any non-psychiatric medications. *Id.* at 4.

According to the medication administration records, Plaintiff began receiving Wellbutrin, 75 mg., once a day on November 7. On November 16, the dosage was increased to 75 mg. twice a day, and on November 22 the dosage was increased to 150 mg. twice a day. *Smith Ex.* A-1 at 110. On December 2, 2014, the Wellbutrin was decreased to 150 mg. once a day, and Plaintiff

was placed on Zyprexa 5 mg. once a day. *Med. Defts' Exs.* 1 at ¶ 16 & 1-f. He began receiving these doses on December 3, 2016. *Id.* at ¶ 17 & 1-f. He continued receiving these doses through the date he filed this lawsuit. *Id.* at ¶ 18 & 1-f. Plaintiff received Topomax 100 mg. twice a day from November 7, 2014, through the date of his filing of this lawsuit. *Med. Defts. Ex.* 1 at ¶ 14 & 1-e-f.

## II.  APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  DISCUSSION

As noted above, there are three pending summary judgment motions.

-10-

### A.  Section 1983

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. West v. Atkins, 487 U.S. 42 (1988); Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986).

### B.  Summary Judgment Motion of Jailer Chris Smith

Plaintiff maintains Jailer Smith violated his rights in two separate ways: (1) by denying him medical care; and, (2) by filing retaliatory or vindictive disciplinary charges against him. Jailer Smith first maintains he is entitled to summary judgment in his favor because he was not deliberately indifferent to Plaintiff's medical needs.  Second, Jailer Smith maintains Plaintiff was provided with Due Process in connection with the disciplinary charges, and the charges, although reduced to minor infractions, were found to be valid.  Third, Jailer Smith contends he is entitled to qualified immunity.  Finally, Jailer Smith argues there is no basis for an official capacity claim against him.

### 1.  Denial of Medical Care

"To establish a constitutional violation based on inadequate medical care, Plaintiff must show that he suffered from a medical need that was objectively serious."  Christian v. Wagner, 623 F.3d 608, 613 (8th Cir. 2010).  He must also show that Jailer Smith exhibited deliberate

AO72A
(Rev. 8/82)

indifference to his serious medical needs. Id.

Here, Plaintiff's denial of medical care claim against Jailer Smith centers primarily on two incidents. The first incident occurred on November 7, 2014, when Plaintiff attempted to approach the med cart dressed only in a towel and Jailer Smith told Plaintiff to get dressed before he approached the cart. Plaintiff refused. Plaintiff testified, however, that he received the medication later that day. This is insufficient to establish deliberate indifference on Jailer Smith's part. See e.g., Zentmeyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000) (the occasional missed dose of medicine, without more, does not violate the Eighth Amendment); Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987) (inmate with heart condition missed a morning dose of medication; no showing that this was an instance of callous disregard in the face of a pressing medical emergency); Herndon v. Whitworth, 924 F. Supp. 1171 (N.D. Ga. 1995) (occasional missed doses of medication do not implicate the Constitution)

The second incident occurred on November 20, 2014, when Plaintiff alleges Jailer Smith was present when Nurse Bradley told him he could file grievances or he could see the doctor. While a limited duty to intervene has been recognized in certain contexts, no such duty arose in this case. See e.g., Livers v. Schenck, 700 F.3d 340 (8th Cir. 2012) (recognizing duty to intervene when excessive force is being used). This is not a case where the constitutional violation was imminent and only action on Jailer Smith's part could prevent it. Instead, Plaintiff was as well situated as Jailer Smith was to complain of Nurse Bradley's conduct and to advise the jail administration of her actions. Plaintiff could have reported that Jailer Smith witnessed the allegedly unconstitutional conduct. The alleged failure to intervene on Jailer Smith's part does not equate to deliberate indifference to the Plaintiff's serious medical needs. As noted

-12-

above, Plaintiff's needs were being addressed by medical staff and Jailer Smith had no medical training.

To the extent Plaintiff seeks to hold Jailer Smith liable for the fact that Plaintiff did not receive his medication for the first few days he was in the WCDC, the claim fails. A nurse and the Plaintiff signed the intake medication form on November 5, 2014. *Smith Ex.* A-1 at 42. Further, Plaintiff was medically screened on November 6, 2014. *Id.* at 44. No evidence was introduced suggesting Jailer Smith had any reason to believe medical staff were not addressing Plaintiff's medical needs. Further, there was no evidence introduced suggesting Jailer Smith was involved in anyway in making the determination of whether, or when, Plaintiff should be treated with prescription medication. See e.g., Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) (non-medical professional not personally liable for medical staff's treatment decisions).

Jailer Smith is entitled to summary judgment on this claim. Further, having found that the facts do no make out a constitutional violation, Jailer Smith is entitled to qualified immunity. See, e.g., Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

## 2. Retaliatory Disciplinary Charges

"An inmate may maintain a cause of action for retaliatory discipline . . . where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights." Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008). "A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007).

-13-

It has been held that "if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules and regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." Goof v. Burton, 7 F. 3d 734, 738 (9th Cir. 1993). "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008).

Here, a hearing was held by an impartial decision maker and some evidence was found to support the disciplinary charges although they were reduced to minor infractions. This precludes any retaliatory discipline claim.

To the extent the Complaint could be read to assert a Due Process claim, that claim also fails. "The Supreme Court has outlined the procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." Hartsfield v. Nichols, 511 F.3d 826, 830 (8th Cir. 2008) (citing Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974)). These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. Id; see also Dible v. Scholl, 506 F.3d 1106, 1110 (8th Cir. 2007). As outlined above, the process provided to the Plaintiff in this case met the requirements set forth by the Supreme Court.

Jailer Smith is entitled to summary judgment on this claim. Further, having found that the facts do no make out a constitutional violation, Jailer Smith is entitled to qualified immunity. See, e.g., Krout v. Goemmer, supra.

-14-

### 3. Official Capacity Claim

An official capacity claim "is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claim is treated as a claim against Washington County. See Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010).

"A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right." Alexander v. Hedback, 718 F.3d 762, 766 (8th Cir. 2013) (citations omitted). "A governmental policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007) (internal quotations and citations omitted). A "custom involves a pattern of persistent and widespread . . . practices which become so permanent and well settled as to have the effect and force of law." *Id.*

"[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Moreover, the plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional." Luckert v. Dodge County, 684 F.3d 808, 820 (8th Cir. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff contends Jailer Smith failed to follow County policy. *Smith Ex.* B at 69-71. Plaintiff has not alleged "the continuing, widespread, persistent pattern of constitutional misconduct necessary to find the county liable." Luckert, 684 F.3d at 820; see also Elder-Keep

-15-

v. Aksamit, 460 F.3d 979, 987 (8th Cir. 2006) (failure to follow policy does not show the existence of an unconstitutional policy).  On the facts of this case, there is simply no basis on which Washington County can be held liable for the actions of Jailer Smith.  Jailer Smith is entitled to summary judgment on this claim.

### C.  Summary Judgment Motion of the Medical Defendants

The Medical Defendants contend they are entitled to summary judgment because they were not deliberately indifferent to Plaintiff's serious medical needs.  As discussed above, to prevail on a denial of medical care claim, the Plaintiff must show:  (1) the existence of an objectively serious medical need; and, (2) that Defendants knew of and deliberately disregarded. Vaughn v. Gray, 557 F.3d 904, 908-09 (8th Cir. 2009).  Defendants' mental state must be akin to criminal recklessness.  Id.  This standard is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment.  Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (constitutional violation cannot rest on mere disagreement with treatment decisions); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (inmates have no constitutional right to particular course of treatment, and doctors are free to use their own medical judgment); Logan v. Clarke, 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors not deliberately indifferent where they treated the prisoner and offered sensible medication). Similarly, "[m]erely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." Jackson v. Buckman, 756 F.3d 1060, 1065-66 (8th Cir. 2014) (citations omitted).  To constitute deliberate indifference, "[a]n inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Id. at 1066 (internal quotation marks and

-16-

citation omitted).

Here, Plaintiff has alleged that the Medical Defendants were aware of the medications he brought into the WCDC but failed to continue to provide him with those medications. He contends this failure left him suffering from pain. Plaintiff's psychiatric medications were continued while his medical records were obtained. The medical records obtained by Defendants indicated Plaintiff was taking no non-psychiatric medications at that time. His psychiatric medications were continued in the same dosages and the dosages were changed in an effort to address Plaintiff's continued complaints of anxiety. What medications should be prescribed and in what dosages is an exercise of medical judgment. Mere disagreement with this decision does not constitute deliberate indifference. See e.g, Meiur v. Greene County Jail Employees, 487 F.3d 1115, 118-19 (8th Cir. 2007). There is simply no evidence of deliberate indifference on the part of the Medical Defendants. They are entitled to judgment in their favor.

**D. Summary Judgment Motion of Officer Mackey**

Officer Mackey contends he is entitled to summary judgment as he did not exhibit deliberate indifference to the Plaintiff's serious medical needs. As Plaintiff testified, he cannot show deliberate indifference on Officer Mackey's part. Officer Mackey is entitled to summary judgment in his favor.

**IV. CONCLUSION**

For the reasons stated, I recommend that: (1) the Motion for Summary Judgment (ECF No. 51) filed by Jailer Smith be **GRANTED**; (2) the Motion for Summary Judgment (ECF No. 55) filed by the Medical Defendants be **GRANTED**; and, (3) the Motion for Summary Judgment (ECF No. 58) filed by Officer Mackey be **GRANTED.** This case should be dismissed with

-17-

AO72A
(Rev. 8/82)

prejudice.

   **The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

   DATED this 6th day of July, 2016.

                                                    /s/ Mark E. Ford
                                                    HON. MARK E. FORD
                                                    UNITED STATES MAGISTRATE JUDGE

-18-